There were no contentions that Mr. Garnes, whether or not he did in fact fire a semi-automatic weapon. He did. The question of this petition really centers on whether or not there is specific intent on behalf of Mr. Garnes to kill Mr. Garnes. And it's on this central issue that the trial court, at the conclusion of the two-day trial, issued an instruction which everyone agrees was an error. And the error had to do with the malice and the definition of malice. The instruction that was actually given at the conclusion of the case, Calgic 122, defines malice in such a way that eliminates the element of specific intent. At the same time, the Court also provided the correct instruction as to attempted murder and specific intent, express malice in Calgic 8.66. And it's our contention that those two conflicting jury instructions, simply providing a correct jury instruction, did not eliminate the prejudice that was involved in instructing the jury inappropriately. And there's a number of reasons for that. This was an unusual case. And part of the petition actually raised the question of insufficiency of the evidence. There was many, much testimony regarding the circumstances surrounding the shooting, whether or not Mr. Garnes was aiming his gun at the victim, whether he was shooting up in the air, whether he was shooting at empty cars. It was a close case. And the way that we can tell that this was a close case is that the jury, after a two-day trial, actually deliberated for over 12 hours. There were four charges. Mr. Garnes was, he was acquitted of one charge of assault with a semi-automatic weapon. So the Court didn't have a, the Government didn't have a definitive victory. There were questions asked by the jury during the deliberations having to do with do we have to unanimously agree that there is no specific intent for attempted murder before we can go on to the question of whether or not there was voluntary, attempted voluntary manslaughter. The jury also had the victim's testimony read back to them. And I think that's a good question. I'm sorry? How did the judge answer that question? That in fact, no, they do not have to answer one. You do not have to find unanimously that there is no guilt of one charge in order to go to a lesser-included offense. The main issue here is whether or not this error was harmless. And it's our contention, given the circumstances of this particular case, that it can't be said that it is harmless. The jury could have, and this was our argument in terms of insufficiency of the evidence, the jury could have reasonably found that Mr. Garnes did not have specific intent to murder Mr. Brooks. Where we are, and because of the posture of this case, the State court says, yes, it was there to give that first instruction. But a much more specific and detailed instruction was given as part of the elements of the offense. And that was correct. And it's harmless because the jury would have let that trump the other instruction. And what we have to see is whether the State appellate court's conclusion about harmless error was contrary to or an unreasonable application of some Supreme Court decision of the Federal law. Exactly. And I think what the State court's error here was making certain assumptions about whether or not the jury would have considered the incorrect jury instruction. That's in the very question the jury asked, indicative that they understood specific intent was required. I think actually it also is an indication that the jury wasn't convinced that there was, in fact, specific intent. That's a different issue. The question was whether this other charge, which was erroneous, was in any way guiding their deliberations. But the question itself indicates whether they thought there was, some thought there was specific intent or not. But it's pretty clear, to me at least, that the question itself indicated that this erroneous charge didn't seem to be what they're focusing on in any way. Well, I think it's also reasonable. And I think this is where we're dealing sort of in speculation about what the jury, how the jury was weighing the facts in terms of the instructions that it was given. Because I think it is also reasonable to assume that the jury may have, in giving these two conflicting jury instructions, had looked at the expressed malice that is included in Calject 8.66 and defined it in such a way that eliminated the specific intent element of attempted murder, simply because Calject 1.22 actually defines malice in a completely different way. It is only a... It doesn't refer to specific intent in the same way that the main charge referred to. Well, part of the jury instruction in terms of specific intent relies on the definition of expressed malice. And what I don't think is unreasonable for us to, as we look at how the jury concluded its deliberations, is that they may have looked at 1.22 in defining what is malice in terms of the 8.22 argument of expressed malice, which would eliminate, again, the specific intent. So what was the timing of this? My impression from the record is that the malice instruction was given as part of the preliminary instructions, and then there was the trial, and then right before the jury retired to deliberate, the specific malice instruction was given. Is that correct? My understanding of the record, and I was on trial counsel, but my recollection of the record is that the jury, at the conclusion of the case, actually instructed the jury as to each of the instructions. And these were his closing instructions to the jury, which included the specific intent, 8.22 and 1.22. I believe he received them both at the same time, gave them both at the same time. And juries usually go back with the instructions to refer back to. But generally, a trial court judge would give, I mean, my experience, maybe I'm wrong in this case, but there's a set of maybe general instructions that are given before the trial begins, and then you have the trial, and then after the evidence is in, you have your set of more specific instructions tailored to what was presented at trial. And, again, just my recollection of the record, it seemed to me in my reading through the closing instructions by the court to the jury included 1.22, which was the more, which was the incorrect instruction to provide to the jury. Any other questions? I'll reserve whatever time I have for rebuttal. Thank you. MR. O'REILLY. Good morning, Your Honors. My name is Mike O'Reilly. I'm a Deputy Attorney General for the State of California, and I represent the Respondent. I don't know if the Court has any preliminary questions, or if the Court would like to ask any preliminary questions. I'd be interested in a statement of facts, but I disagree with Petitioner's Counsel or Appellant's Counsel that this was a closed case. In a nutshell, the evidence was that Appellant and the intended victim had a couple of very serious physical confrontations before the shooting, and then the Appellant went up to his doorstep and pulled out this 9-millimeter semi-automatic and pointed it at the victim. And the testimony, excuse me, the evidence that he pointed at the victim was corroborated by several witnesses, and he said to the victim, as he was pointing the 9-millimeter at him, yeah, you. And he ran towards him, and then the victim went running down the street. Ballistics experts and evidence technicians found gunshots, holes in car windows along the route that the victim ran. So it's evident that he wasn't just, it's clear that he wasn't, the Appellant wasn't just trying to frighten the victim. He didn't, he wasn't shooting the gun in the air. He was shooting it horizontally, 90 degrees, excuse me, parallel with the ground, because these car windows, which are usually about maybe four or five feet high, and the victim was 5'4". Also, there was evidence that he chased the victim, not just, didn't just stand on the porch or in his yard, because a live round was found out in front of a where the Appellant lived, which means that the semi-automatic may be jammed, or he ejected in his, as his adrenaline was rushing, he ejected a live round. And then, again, the evidence that he chased the victim was corroborated by a neighbor who initially told police officers, I saw the Appellant chasing the victim down the street. That neighbor, whose name was Satcher, later testified in a contradictory fashion, but was impeached by the detective who took his statement. So the evidence was fairly overwhelming that he was trying to kill the victim. He fired, no one was quite clear on how many rounds he fired, but it was at least four, and perhaps as many as seven. So when you take a look at the entire record, I mean, is it possible that some rational jury somewhere could find that he was only attempting to frighten the victim? I mean, that's theoretically possible. But no one could say that this jury could not rationally reach the result that they did, that this was an attempt to kill. And even the Appellant testified that he was upset at the victim, because the victim was selling marijuana in front of his house. And he was angry because his mother permitted him to sell marijuana, but not in that neighborhood. So he was upset that the victim was using his house as territory that he himself was prohibited from by his mother. And with regard to the primary issue that Appellant's counsel argued, the trial court instructed the jury that in order to prove the attempted murder, each of the following elements must be proven. The person committing the act harbored express malice of forethought, namely a specific intent to kill unlawfully another human being. And we all agree that the introductory general instruction about malice, meaning vex or annoy, was incorrect. But when the This is governed by plain error, right? I mean, there was no objection to this. There was no objection. In fact, the instruction, the general instruction that malice means an attempt of vex or annoy was requested by defense counsel. But the court when it gave It was requested? I'm sorry. It was requested? It was requested by defense counsel. But more importantly, the court also instructed the jury that specific intent is defined within the elements of the crime. So the jury knew that this was, the earlier instruction was sort of a broad general introductory type of explanation, but the specific intent was among the elements of the crime of attempted murder, and the court correctly identified. Let me find it here. Further, the jury was instructed that, and this is the court of appeals speaking, Further, the jury was instructed that in the crime of attempted murder, there must exist a union of act and intent, and that the specific intent required is included in the definition of the crimes set forth elsewhere in these instructions. So I don't think that there is any likelihood whatsoever that the instructional error in any way so infected the trial as to violate due process. If there are no questions, I'll sit down. All right. Thank you. Thank you. I just had a couple of points on rebuttal. The evidence that was presented at this trial was pretty equally weighted. There was testimony that Mr. Garns was firing his gun in the air and all, and crazy. And in fact, Mr. Garns, who testified, said that he shot at empty cars down the road, which would actually plays into the physical evidence that was found in the route that Mr. Brooks took. There isn't any evidence that those bullet casings were actually fired at a certain time while Mr. Brooks was running by there. They could have been fired earlier as Mr. Garns had testified. And again, the jury instruction, one of the reasons why the Federal law has found that conflicting jury instructions, one correct and one incorrect, simply giving a correct jury instruction does not necessarily eliminate the fact that we have potential prejudice by giving an inappropriate instruction. And given the circumstances of this case, it was a close case. There was much deliberation. There was an acquittal on one of the charges. I believe it is possible and reasonable to assume that this error, this jury instruction that was given an error actually did sway the jury in a way and eliminate one of the elements of the attempted murder charge, which was specific intent. Thank you.
judges: Canby, Wardlaw, Trager